UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

:
LEONARD BURWELL,                                            :
:
                                    Petitioner,            :
:
                        -v -                                :
:
TIMOTHY LAFFLIN,                                           :
:
                                    Respondent.            :
:
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/5/2016

1:14-cv-3070-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, District Judge:

## I.      INTRODUCTION

On October 1, 2009, Petitioner Leonard Burwell was convicted of one count of Criminal

Sale of a Controlled Substance in the First Degree, in violation of New York Penal Law § 220.43(1).

The evidence at trial showed that Mr. Burwell had supplied a drug dealer, Mark Hammond, with

cocaine for use in an ensuing sale.  Mr. Burwell was subsequently sentenced to a term of eight years'

imprisonment, followed by five years of post-release supervision.  The Appellate Division affirmed

his conviction on July 2, 2013.  *People v. Burwell*, 968 N.Y.S.2d 83 (App. Div. 2013).  Mr. Burwell then

sought leave to appeal to the New York Court of Appeals, but that court denied leave on November

18, 2013.  *People v. Burwell*, 3 N.E.3d 1169 (N.Y. 2013) (Table).

Mr. Burwell, proceeding *pro se*, filed this timely petition for a writ of habeas corpus under 28

U.S.C. § 2254 ("Pet."), Dkt. No. 1.  He raises two grounds for relief:  first, that the verdict was not

supported by legally sufficient evidence; and second, that counsel was ineffective for failing to

preserve the insufficiency claim and for failing to request an appropriate jury charge.

Because Mr. Burwell's claims for relief are unexhausted, procedurally barred, or otherwise

without merit, the petition for a writ of habeas corpus is DENIED.

## II.      BACKGROUND

### A.  Facts Giving Rise to Petitioner's Conviction

For several years, from approximately 2004 until 2007, Mark Hammond and four other associates sold drugs on 137th Street and Fifth Avenue in Manhattan.  Hammond: Tr. 308, 311, 398, Dkt. No. 9-8.[1]  Mr. Hammond primarily sold heroin, of which he had a "steady" supply, but also occasionally sold cocaine at customers' requests, the latter of which he procured from "who[ever] was around at the time."  Hammond: Tr. 308–10.

In 2007, Mr. Hammond began selling drugs to an undercover officer approximately once or twice per month.  Breen: Tr. 43–44, 48, 91, Dkt. No. 9-7; UC: Tr. 158, Dkt. No. 9-7; Hammond: Tr. 335.  After numerous transactions, Mr. Hammond agreed to sell 15 "bundles" of heroin and 80 grams of cocaine to the undercover officer.  UC: Tr. 158–59; Hammond: Tr. 313.  Mr. Hammond and the undercover officer agreed to execute the transaction on October 19, 2007.  UC: Tr. 158–59.

That morning, Mr. Hammond procured the 15 bundles of heroin, but had only about half of the cocaine that he had promised to sell.  Hammond: Tr. 313–14.  Mr. Hammond met with the undercover officer on 137th street and Fifth Avenue, explained that he did not yet have enough cocaine, and told him that he would make some calls to procure the remaining drugs.  *Id.* at 338–39. After several unsuccessful phone calls, Mr. Hammond noticed Mr. Burwell, whom he regularly spoke to for over a year, sitting by himself in the driver's seat of his Jeep.  *Id.* at 310–12, 315, 338–40.  Mr. Hammond asked Mr. Burwell if he had any cocaine, and Mr. Burwell responded affirmatively, explaining that he had "like 25 grams."  *Id.* at 315–16; 340.  Mr. Hammond stated that he could "sell it right now," noted that "it was for a customer," and "indicated" that he would be selling the cocaine to the undercover officer, who was standing about 10 feet away from them.  *Id.* at 316, 340–42.

---

[1] "Tr." refers to the original pagination of the state court transcript of Mr. Burwell's trial.

Shortly afterwards, Mr. Hammond walked over to the undercover officer.  *Id.* at 342.  Mr. Hammond explained that he had been able to obtain only 30 grams of cocaine, but he pointed at Mr. Burwell (who was now about 20-30 feet away in the Jeep) and stated that he could supply additional cocaine, although he cautioned that it was lower-quality cocaine that was not suitable for "cooking up" and therefore could not be "ma[de] into crack-cocaine."  UC: Tr. 166–68; Hammond: Tr. 342.  The undercover officer accepted the offer.  UC: Tr. 168–69.

Mr. Hammond walked back to Mr. Burwell's Jeep, and told Mr. Burwell to retrieve his cocaine.  UC: Tr. 169; Hammond: Tr. 343.  Mr. Hammond then returned to the undercover officer and told him that he was "going to go get his stuff ready" and that Mr. Burwell was "going to get his stuff."  UC: Tr. 181.  Approximately twenty minutes later, both Mr. Hammond and Mr. Burwell returned separately.  UC: Tr. 169; Hammond: Tr. 342, 345.  Mr. Hammond entered Mr. Burwell's Jeep, and Mr. Burwell gave him a zip-lock bag with a yellow seal containing cocaine.  Hammond: Tr. 345; 391–93; UC: Tr. 170; Palumbo: Tr. 233, Dkt. No. 9-8.

Mr. Hammond then directed the undercover officer to enter a green Saab.  UC: Tr. 171.  Mr. Hammond indicated that the officer's "stuff"—a zip-lock bag with a purple seal containing 25.215 grams of cocaine—was "on the floor."  UC: Tr. 171; Palumbo: Tr. 233–34.  Once inside the vehicle, Mr. Hammond pulled a separate bag from his pocket—a zip-lock bag with a yellow seal containing 38.047 grams of cocaine—and handed it to the undercover officer, along with 15 bundles of heroin that had been in the backseat.  UC: Tr. 171; Palumbo: Tr. 233–34.  In total, Mr. Hammond gave the undercover officer 63.262 grams of cocaine, or approximately 2.2 ounces.  Palumbo: Tr. 234.  The undercover officer then paid Mr. Hammond $3,575, exited the vehicle, and walked away.  UC: Tr. 171–72.

On November 16, 2007, a grand jury indicted Mr. Burwell on one count of Criminal Sale of a Controlled Substance in the First Degree.  State Court Record ("SR") at 35, Dkt. No. 9-2.  The

offense required proof that a defendant "knowingly and unlawfully" sold "one or more preparations, compounds, mixtures or substances containing a narcotic drug" with an "aggregate weight of two ounces or more."  N.Y. Penal Law § 220.43(1).  Mr. Hammond and Mr. Burwell were subsequently arrested on November 20, 2007.  Hammond: Tr. 296; Breen: Tr. 82–83.  Mr. Hammond signed a cooperation agreement, in which he agreed to plead guilty and testify truthfully at Mr. Burwell's trial in exchange for a lesser sentence.  Hammond: Tr. 300–07.  On October 1, 2009, a jury convicted Mr. Burwell of the charged offense.  Verdict Tr. 494, Dkt. No. 9-8.  He was sentenced to eight years' imprisonment, followed by five years of post-release supervision.  Sentencing Tr. 18, Dkt. No. 9-8.

### B.  State Court Proceedings

With the assistance of counsel, Mr. Burwell filed a brief on direct appeal in the Appellate Division seeking to overturn his conviction.  On direct appeal, Mr. Burwell argued that:  (1) the evidence was legally insufficient to convict him because he did not know that Mr. Hammond was going to add his own supply of cocaine to that supplied by Mr. Burwell, and thus he lacked knowledge that the aggregate amount sold exceeded two or more ounces, SR at 128–36; (2) trial counsel was ineffective because he failed to preserve for appeal the insufficiency of the evidence argument, *id.* at 137–44; and (3) Mr. Burwell was deprived of his due process right to a fair trial because the trial court failed to properly instruct the jury regarding accessorial liability under New York Penal Law § 20.15, *id.* at 145–51.[2]  The People filed an opposition brief, *id.* at 156–227, and Mr. Burwell subsequently filed a reply brief, *id.* at 228–55.

The Appellate Division unanimously affirmed the conviction on July 2, 2013.  *Burwell*, 968 N.Y.S.2d 83.  The Appellate Division first rejected Mr. Burwell's challenge to the sufficiency of the evidence, finding that the claim was "unpreserved" and "declin[ing] "to review it in the interest of

---

[2] Mr. Burwell also raised a fourth claim on direct appeal, asserting that the trial court failed to properly instruct the jury that Mr. Hammond's testimony had to be corroborated under N.Y. C.P.L. § 60.22 because he was an accomplice.  SR at 120–28.  The current petition does not raise any arguments with respect to that claim.

justice." *Id.* at 84.  Additionally, "as an alternative holding," the Appellate Division "reject[ed] it on the merits" and found that "the verdict was not against the weight of the evidence." *Id.*  Specifically, the Appellate Division explained that "the evidence established defendant's accessorial liability for the accomplice's sale of cocaine to the officer, and under the circumstances presented this accessorial liability was not necessarily limited to the particular package of cocaine that defendant, himself, provided." *Id.* (citation omitted).  Moreover, the Appellate Division found that Mr. Burwell "had knowledge of the nature of the controlled substance to be sold, and it is not a defense that he did not know the aggregate weight to be sold (*see* Penal Law § 15.20[4]), regardless of how it was to be packaged or divided." *Id.*

Mr. Burwell's claim that "his trial counsel rendered ineffective assistance by failing to raise the . . . sufficiency issue" was held "unreviewable on direct appeal because there are indications, not fully developed on the present record, that counsel may have had strategic reasons for not raising the issue." *Id.*  Furthermore, the Appellate Division found that Mr. Burwell "received effective assistance under the state and federal standards," that trial counsel's decision to forego the sufficiency argument "was within 'the wide range of professionally competent assistance,'" and that Mr. Burwell had "not shown that the lack of this argument affected the outcome of the case or deprived defendant of a fair trial." *Id.* at 84–85 (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)).

Finally, the Appellate Division held that Petitioner "did not preserve his claim[ ] that the court should have instructed the jury on . . . accessorial liability for different degrees of an offense (*see* Penal Law § 20.15)." *Id.* at 85.  The Appellate Division thus "decline[d] to review [it] in the interest of justice," but as an "alternative holding" found that Mr. Burwell "was not prejudiced by the absence of . . . [the] instruction[ ]." *Id.*

The New York Court of Appeals denied leave to appeal on November 18, 2013. *Burwell*, 3 N.E.3d 1169.

### III.   LEGAL STANDARD

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) (explaining that "[a] claim that a state conviction was obtained in violation of state law is not cognizable in the federal court").  To obtain habeas relief for alleged violations of federally protected rights, a petitioner must generally meet three requirements:  "(1) exhaustion; (2) lack of a procedural bar; and (3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), Pub.L. No. 104–132, 110 Stat. 1214 (1996)." *Todd v. Dolce*, No. 13-cv-5421 (NGG), 2015 WL 4488455, at \*4 (E.D.N.Y. July, 22, 2015).

### A.   Exhaustion

"A federal habeas petitioner must exhaust state remedies before he can obtain federal habeas relief." *Carey v. Saffold*, 536 U.S. 214, 220 (2002).  The exhaustion requirement "derives ultimately from notions of comity between the federal and State judicial systems," and is "codified by statute at 28 U.S.C. § 2254(b) and (c)." *Strogov v. Att'y Gen. of State of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999). Specifically, the statute provides:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)(i) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).

"Exhaustion requires that the prisoner 'fairly present' the federal claim 'in each appropriate state court (including a state supreme court with powers of discretionary review).'" *Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201 (2d Cir. 2010) (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). "A petitioner may satisfy the fair presentation requirement by: (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (quoting *Daye v. Att'y Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc)). "If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim procedurally defaulted." *Id.* (brackets, internal quotation marks, and citation omitted).

### B. Procedural Bar

"A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (brackets, internal quotation marks, and citation omitted); *see also Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002) ("Absent a showing of cause and prejudice, it is settled law that an independent and adequate state law ground for a state court conviction cannot be disturbed on habeas.") (citing *Coleman v. Thompson*, 501 U.S. 722, 729–31 (1991)). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state

procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Cone v. Bell*, 556 U.S. 449, 465 (2009). However, "federal habeas courts must ascertain for themselves if the petitioner is in custody pursuant to a state court judgment that rests on independent and adequate state grounds." *Coleman*, 501 U.S. at 736.

The Second Circuit has "repeatedly stated that in order for federal habeas review to be procedurally barred, a state court must actually have relied on a procedural bar as an independent basis for its disposition of the case, and the state court's reliance on state law must be unambiguous and clear from the face of the opinion." *Galarza v. Keane*, 252 F.3d 630, 637 (2d Cir. 2001). "Even where the state court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default." *Murden v. Artuz*, 497 F.3d 178, 191 (2d Cir. 2007).

However, "in certain limited circumstances, even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'" *Garvey v. Duncan*, 485 F.3d 709, 713–14 (2d Cir. 2007) (citing *Lee v. Kemna*, 534 U.S. 362, 376 (2002)). The Second Circuit has clarified that three factors serve as "guides in evaluating 'the state interest in a procedural rule against the circumstances of a particular case.'" *Id.* at 714 (quoting *Lee*, 534 U.S. at 381–85). These three factors are:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.* (quoting *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003)).

"Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the petitioner can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012) (quoting *DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006)). "[T]he cause requirement is met if some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule." *Id.* Alternatively, "futility may constitute cause where prior state case law has consistently rejected a particular constitutional claim." *Id.* at 111–12 (internal quotation marks and citation omitted). "The 'prejudice' requirement is met by establishing" that an "error . . . resulted in 'substantial disadvantage, infecting the entire trial with error of constitutional dimensions.'" *Id.* at 112 (brackets omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)).

### C. AEDPA Standard

If a habeas petitioner asserts a violation of federal law and complies with all applicable procedural requirements, the state prisoner must also "show that the resolutions of the merits of their claims in the state courts were 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or that they were 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Mannix v. Phillips*, 619 F.3d 187, 195 (2d Cir. 2010) (brackets omitted) (quoting 28 U.S.C. § 2254(d)(1)–(2)). "A decision is contrary to Supreme Court precedent if the state court 'applied a rule that contradicts' that precedent, or reached a different result than the Supreme Court on facts that are 'materially indistinguishable.'" *Id.* (brackets omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "An 'unreasonable application' occurs when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014) (brackets omitted) (quoting *Williams*, 529 U.S. at 413). "The Supreme Court has explained that an

'unreasonable application' is one that is 'more than incorrect or erroneous'; it must be 'objectively unreasonable.'" *Rivas v. Fischer*, 780 F.3d 529, 546 (2d Cir. 2015) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)). "In other words, the state court's decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

"This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Contreras v. Artus*, 778 F.3d 97, 106 (2d Cir. 2015) (brackets, ellipses, and internal quotation marks omitted) (quoting *Cullen*, 131 S.Ct. at 1398). "[A] determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[A] 'state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

## IV.   ANALYSIS

### A.  Sufficiency of the Evidence

Petitioner first argues that the verdict was supported by legally insufficient evidence because the cocaine that Petitioner supplied to Mr. Hammond weighed less than two ounces, and he was unaware that Mr. Hammond included a second bag of cocaine in the sale that, in the aggregate, brought the total weight of cocaine sold to more than two ounces. Pet. at 12–19. As a threshold matter, however, the Court must address whether the claim is procedurally barred from habeas review.

### 1. *Procedurally Barred*

On direct appeal, the Appellate Division found that Petitioner's legal insufficiency claim was "unpreserved" and the court "decline[d] to review it in the interests of justice." *Burwell*, 968 N.Y.S.2d at 84. Although the Appellate Division did not expressly indicate its basis for finding the claim to be unpreserved, the court presumably relied on New York's contemporaneous objection rule, N.Y. C.P.L. § 470.05(2). *See Baptiste v. Ercole*, No. 08-cv-8026 (DAB), 2011 WL 611821, at *2–3 (S.D.N.Y. Feb. 16, 2011) (although the "Appellate Division did not expressly state that its decision . . . rested on [N.Y. C.P.L. § 470.05(2) as] a state procedural bar," the state court's statement that the defendant's "remaining claims are unpreserved and we decline to review them in the interest of justice" was sufficient to establish that it was relying on a procedural bar). Section 470.05(2) requires that objections be brought to the attention of the trial court at the time of the challenged ruling, and thus, "New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." *Downs v. Lape*, 657 F.3d 97, 103 (2d Cir. 2011).

Petitioner effectively concedes that the legal insufficiency argument was not preserved for appellate review—indeed, the core of his ineffective assistance of counsel claim is based on trial counsel's failure to raise that very objection. *See* Pet. at 21 ("For the absence of his objections and his specificness [*sic*] in the trial order of dismissal, the record stood unpreserved and and [*sic*] undeveloped for appellate review.").

The Appellate Division's reliance on N.Y. C.P.L. § 470.05(2) in denying Petitioner's appeal is an independent and adequate state law ground procedurally barring this Court from reviewing the claim. The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule. . . . [that] constitutes an independent and adequate state law ground for disposing of a claim." *Downs*, 657 F.3d at 104; *see also Alexander v.*

*Connell*, No. 10-cv-6658 (NRB), 2012 WL 3249415, at *9 (S.D.N.Y. Aug. 3, 2012) ("[P]rocedural rulings such as the failure to preserve claims through contemporaneous objection have consistently been deemed sufficient grounds to constitute a procedural bar.") (collecting cases).

An analysis of the factors from *Garvey* does not support the conclusion that the Appellate Division's application of N.Y. C.P.L. § 470.05(2) was exorbitant.  Under the first factor, "the trial court clearly could not have relied on petitioner's violation of the contemporaneous objection rule— by definition, such a violation cannot occur until a party reaches the appellate court and attempts to raise an argument that has not been preserved." *Dozier v. McGinnis*, 558 F. Supp. 2d 340, 350 (E.D.N.Y. 2008) (citing *Garvey*, 485 F.3d at 719).  However, "the lack of a specific objection would not, almost by definition, be mentioned by the trial court." *Stewart v. Greene*, No. 05-cv-0566 (WHP) (THK), 2009 WL 4030833, at *15 (S.D.N.Y. Nov. 19, 2009) (brackets and ellipses omitted) (quoting *Cotto*, 331 F.3d at 242).  Additionally, "the first guidepost is less relevant in cases where the procedural default is based on a failure to preserve a claim by sufficient protest at trial because 'the likely impact of a [timely] objection involves a certain degree of speculation.'" *Ashley v. Burge*, No. 05-cv-4497 (JGK), 2006 WL 3327589, at *5 (S.D.N.Y. Nov. 3, 2006) (quoting *Cotto*, 331 F.3d at 242–43).  Under the second factor, "[i]t is well established that New York courts will not review unpreserved claims of legal insufficiency, and that even general objections to the sufficiency of the evidence are inadequate to preserve specific sufficiency challenges later raised on appeal." *Dozier*, 558 F. Supp. 2d at 350.  Under the third factor, because Petitioner made "no objection to the legal sufficiency of the evidence, [he] cannot be said to have substantially complied with section 470.05(2)." *Id.*

This analysis is unchanged by the fact that the Appellate Division also made a decision on the merits.  *See Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim

is procedurally defaulted.") (citation omitted); *accord Mattia v. Fisher*, No. 07-cv-899 (CBA) (JA), 2009 WL 3762301, at *13 (E.D.N.Y. Nov. 10, 2009) ("If a state court holding contains a plain statement that a claim is procedurally barred, then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative.") (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989)).

Thus, Petitioner's legal insufficiency argument is procedurally barred from habeas review, unless Petitioner can demonstrate cause to excuse the procedural default and actual prejudice, or that he is actually innocent.

### a. *Cause and Prejudice*

Petitioner fails to demonstrate cause and actual prejudice to excuse the procedural default because the legal insufficiency claim is meritless. "[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Policano v. Herbert*, 507 F.3d 111, 116 (2d Cir. 2007) (internal quotation marks omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)). "Sufficiency-of-the-evidence claims 'face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.'" *Porter v. Keyser*, No. 15-cv-816 (JMF), 2016 WL 1417847, at *3 (S.D.N.Y. Apr. 08, 2016) (quoting *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam)). "First, even on direct review, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Garbutt v. Conway*, 668 F.3d 79, 81 (2d Cir. 2012) (emphasis in original) (quoting *Jackson*, 443 U.S. at 319). "Second, if the state courts have rejected the defendant's constitutional arguments on the merits, a federal court may not grant the writ of habeas corpus unless the state courts' decision was based on

'an unreasonable application of clearly established Federal law.'" *Id.* (alterations omitted) (quoting 28 U.S.C. § 2254(d)(1)).

"Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense[.]'" *Coleman*, 132 S. Ct. at 2064 (quoting *Jackson*, 443 U.S. at 324 n.16). New York Penal Law § 220.43(1) sets forth the substantive elements of Criminal Sale of a Controlled Substance in the First Degree, and provides that a person is guilty of the offense "when he knowingly and unlawfully sells: one or more preparations, compounds, mixtures or substances containing a narcotic drug and the preparations, compounds, mixtures or substances are of an aggregate weight of two ounces or more[.]"). N.Y. Penal Law § 220.43(1). Aiding and abetting is governed by New York Penal Law § 20.00, which states that "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00. The aiding and abetting statute is qualified by New York Penal Law § 20.15, which provides:

> Except as otherwise expressly provided in this chapter, when, pursuant to section 20.00, two or more persons are criminally liable for an offense which is divided into degrees, each person is guilty of such degree as is compatible with his own culpable mental state and with his own accountability for an aggravating fact or circumstance.

N.Y. Penal Law § 20.15.

Petitioner argues that the verdict was supported by legally insufficient evidence, based on the purported lack of evidence demonstrating his knowledge of the aggregate amount of cocaine sold by Mr. Hammond. Under New York law, however, knowledge of the weight of drugs sold is not necessary to convict individuals of crimes where the aggregate weight of a controlled substance is an element. New York Penal Law § 15.20(4) provides:

> Notwithstanding the use of the term "knowingly" in any provision of this chapter defining an offense in which the aggregate weight of a controlled substance or marihuana is an element, knowledge by the defendant of the aggregate weight of

14

> such controlled substance or marihuana is not an element of any such offense and it is not, unless expressly so provided, a defense to a prosecution therefor that the defendant did not know the aggregate weight of the controlled substance or marihuana.

N.Y. Penal Law § 15.20(4);  *see People v. Cintron*, 881 N.Y.S.2d 183, 184–85 (App. Div. 2009) (finding that "knowledge of the weight of the methadone that [the defendant] possessed and sold . . . is not an element" of criminal sale of a controlled substance); *People v. Estrella*, 756 N.Y.S.2d 655, 656 (App. Div. 2003) ("The People were not required to prove that the defendant knew the weight of the cocaine he possessed and sold in order to convict him of the crimes of which the aggregate weight of a controlled substance is an element"); *see also Hewitt v. City of New York*, No. 09-cv-214 (RJD) (MDG), 2012 WL 4503277, at *6 n.9 (E.D.N.Y. Sept. 28, 2012) ("[criminal suspect's] knowledge of the *quantity* of drugs she possessed and handed to [alleged accomplice] has no bearing on probable cause.") (emphasis in original) (citing N.Y. Penal Law § 15.20(4)).  Thus, relying on New York Penal Law § 15.20(4), the Appellate Division found that "under the facts, defendant was accessorially liable for the sale, regardless of whether he knew how many packages the accomplice would choose to transfer to the purchaser." *Burwell*, 968 N.Y.S.2d at 84

Because New York Penal Law § 15.20(4) does not require knowledge of the aggregate weight of cocaine sold, Petitioner's claim that the evidence was legally insufficient is meritless, and therefore, Petitioner cannot demonstrate actual prejudice. *See Perez v. United States*, No. 89-cr-800, 96-cv-7702 (RPP), 1997 WL 661426, at *4 (S.D.N.Y. Oct. 23, 1997) ("Defense counsel's failure to object, then, cannot have resulted in actual prejudice to petitioner, as the objection would have been meritless.").  And, for similar reasons, Petitioner cannot show "cause" for his failure to preserve the insufficiency claim—based upon the purported ineffectiveness of his trial counsel—because "the failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which Petitioner is entitled." *Black v. Rock*, 103 F. Supp. 3d 305, 321 (E.D.N.Y. 2015) (brackets omitted) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001); *see also*

*Newton v. McCauliffe*, No. 09-cv-9818 (JGK), 2010 WL 2541099, at *4 (S.D.N.Y. June 22, 2010)

("While examples of . . . cause do include attorney error, 'attorney error short of ineffective

assistance of counsel does not constitute cause for a procedural default.'") (brackets omitted)

(quoting *Murray*, 477 U.S. at 492 (1986)).

Accordingly, Petitioner fails to demonstrate cause to excuse the procedural default or actual

prejudice.

### b.  Actual Innocence

Petitioner does not contend that he is actually innocent.  *See* Pet. at 13 (conceding that "there

lies little doubt that the petitioner sold approximately 40 grams of cocaine to Mark Hammond" and

stating that "the truth of this fact is not being challenged in this petition.").  Thus, Petitioner cannot

demonstrate that "failure to consider the claim will result in miscarriage of justice," *Sweet v. Bennett*,

353 F.3d 135, 141 (2d Cir. 2003), which, in any event, is meritless for the reasons already described.

### B.  Ineffectiveness of Counsel

Petitioner next argues that his Sixth Amendment right to the effective assistance of counsel

was violated based on the deficient performance of his trial counsel.  Under *Strickland v. Washington*,

466 U.S. 668 (1984), to establish an ineffective assistance of counsel claim, a petitioner must show

that counsel's representation was fundamentally deficient and that, but for counsel's errors, the

results of the proceeding would have been different.  *Id.* at 687, 694.

To establish the first prong, a petitioner must show that counsel's performance "fell below

an objective standard of reasonableness."  *Id.* at 688.  Courts recognize "a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Id.* at 689.

Nevertheless, a petitioner may establish that counsel's conduct fell below the necessary standards by

showing that counsel "omitted significant and obvious issues while pursuing issues that were clearly

and significantly weaker."  *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (quoting *Mayo v.*

*Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* at 328 (quoting *Mayo*, 13 F.3d at 533).  To satisfy the second prong of *Strickland*, "a petitioner must demonstrate that there was a 'reasonable probability' that his claim would have been successful before the state's highest court."  *Mayo*, 13 F.3d at 534 (brackets, internal quotation marks, and citation omitted).  Furthermore, "[t]he likelihood of a different result must be substantial, not just conceivable."  *Harrington*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693).

### 1.  *Failure to Preserve Sufficiency Claim*

Petitioner first contends that trial counsel's standard of representation fell below an objective standard of reasonableness because counsel failed to preserve the insufficiency of the evidence claim at trial.  Pet. at 5–9.  For the reasons already discussed above, Petitioner cannot establish either the "performance" or the "prejudice" prong of *Strickland* based on counsel's failure to preserve a meritless claim.  Thus, Petitioner fails to demonstrate that the Appellate Division's resolution of this claim was contrary to, or involved an unreasonable application of, the standard articulated in *Strickland*.

### 2.  *Failure to Request Jury Charge*

Petitioner next argues that trial counsel was ineffective for failing to request an appropriate jury charge regarding accessorial liability under New York Penal Law § 20.15.  Pet. at 9–10.  On direct appeal, however, Petitioner argued that he was deprived of his due process right to a fair trial based on the trial court's failure to instruct the jury on New York Penal Law § 20.15—*not* that trial counsel was ineffective for failing to request the instruction.  *See* SR at 148–51.  Because Petitioner framed his claim on direct appeal as only a due process claim, his ineffective assistance claim is unexhausted.  *See Cameron v. Smith*, No. 11-cv-5100 (BMC), 2012 WL 1004893, at *4 n.1 (E.D.N.Y.

Mar. 23, 2012) (finding Fourth Amendment claim unexhausted and procedurally barred from habeas review where petitioner had "framed his claim on direct appeal as a due process claim.").

Moreover, Petitioner can no longer raise the unexhausted ineffective assistance of counsel claim in state court.  "Having completed the one direct appeal and the one application for leave to appeal to the New York State Court of Appeals to which he was entitled, Petitioner cannot again seek leave to present his claim to the state courts." *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 379 (E.D.N.Y. 2013); *see also Villacorta v. Supreme Court, N.Y. Cty.*, No. 10-cv-9516 (DLC), 2011 WL 3251816, at *5 (S.D.N.Y. Jul. 29, 2011) ("Although petitioner failed to exhaust her first two claims, she cannot return to state court to exhaust them as she has already received the one direct appeal to which she is entitled.") (citing *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Consequently, because Petitioner "failed to assert a claim in state court but is now barred from doing so by state procedural rules, his claim technically remains unexhausted but is deemed procedurally defaulted." *Washington v. Goord*, No. 09-cv-10308 (NRB), 2010 WL 2594310, at *4 (S.D.N.Y. June 22, 2010) (citing *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir. 1993)).

Petitioner does not meet either of the exceptions for procedural bar.  Petitioner advances no arguments to support a showing of cause for this procedural default.  "Because petitioner has failed to demonstrate cause for the procedural default of his . . . claims, we do not need to address whether he can establish prejudice before holding his claims insufficient to warrant the cause and prejudice exception to the procedural bar." *Alexander*, 2012 WL 3249415, at *8 (citing *Stepney v. Lopes*, 760 F.2d 40, 45).  Additionally, as discussed above, Petitioner has cannot demonstrate that he was actually innocent.

Accordingly, Petitioner's ineffective assistance of counsel claim based is procedurally barred from habeas review.

## V.     CONCLUSION

For the reasons outlined above, the petition for a writ of habeas corpus is DENIED.

Because Petitioner makes no substantial showing of the denial of a constitutional right, the Court

DENIES a certificate of appealability pursuant to 28 U.S.C. § 2253.  The Clerk of Court is directed

to close this case.

SO ORDERED.

Dated:  August 5, 2016
New York, New York
_____
GREGORY H. WOODS
United States District Judge